IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

CEDRIC L. NEWSOM, ET AL.                    PLAINTIFFS

v.                                 No. 2:11-CV-00172-DCB-JMV

CAROLINA LOGISTICS SERVICES, INC.            DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on the Parties' competing Motions for Summary Judgment [**docket entry nos. 46, 61**] and the Magistrate Judge's Report and Recommendation that Plaintiff Jaji Mani's claims should be dismissed with prejudice for failure to prosecute [**docket entry no. 59**]. Having carefully considered the Motions, the Parties' opposition thereto, the Report and Recommendation, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

## I. Facts and Procedural History

In late April, 2008, Plaintiff Cedric Newsom began work for Defendant Carolina Logistics Services, Inc., (CLS), as a facility manager at its Memphis, Tennessee location. Newsom Depo. at 14. Shortly after starting his work, Newsom made a special arrangement with his center manager, Alfred Taylor, whereby Newsom was permitted to clock out from work after his shift and clean CLS's warehouse in exchange for a banana box of food.[1] Id. at 17, 18. The

---

[1] The food apparently was acquired by CLS during its normal course of business. CLS is a logistics and brokerage company

work consisted of sweeping, mopping, picking up trash, and using a floor cleaning machine to clean the entire warehouse. Newsom Decl. at 1. According to Newsom, he worked approximately four to four-and-a-half hours after each shift. Id.; Newsom Depo. at 36.

In October 2008, Newsom was transferred to CLS's Olive Branch, Mississippi center. There, Taylor remained his supervisor and allowed the banana-box program to continue. Newsom Depo. at 14, 29. Not long after the move, Newsom found that he could not clean the new center alone and recruited Plaintiff Shanda Bramlett, another CLS employee, to assist him with the more arduous work. Id. at 31-32. Taylor agreed to allow Bramlett to participate in the program, and Bramlett began assisting Newsom in March 2009. Id. Bramlett Depo at 13. Bramlett's work entailed sweeping floors, cleaning bathrooms, and performing other cleaning tasks. Bramlett Decl. at. 1. She claims that she worked an average of somewhere between two and three-and-a-half hours after each shift. Id.; Bramlett Depo. at 17. Taylor assisted Newsom and Bramlett by moving pallets that obstructed their ability to clean the premises. Bramlett Dep. at 13-17.

In January 2010, Mark Hogenbirk replaced Taylor as the center manager in Olive Branch. Newsom Depo. at 32. Taylor, who was still employed by CLS, informed Hogenbirk of his deal with Newsom and Bramlett, and Hogenbirk did not object to the agreement. Id. at 35.

―――――――――

headquartered in North Carolina.

2

The banana-box program continued uninterrupted under Hogenbirk's supervision. But in July 2010 Hogenbirk was replaced by Jerry Whittington. Id. at 40. At first, Whittington was either unaware of or tacitly assented to the arrangement.[2] But in December 2010 Whittington discovered that someone was stealing from the CLS warehouse and discontinued any CLS-approved banana-box programs.[3] Id. at 40-41; Bramlett Depo. at 18-19. From December 2010 through March 2011, no one was allowed to take anything from the warehouse. Newsom Depo. at 41. Nevertheless, for reasons unexplained in their depositions, both Newsom and Bramlett continued to perform their after-hours work, apparently without any guarantee of compensation. Newsom Depo. at 40-41; Bramlett Depo. at 18-19.

The remaining circumstances surrounding the reinstatement of the banana-box program and the details leading up to Newsom's

---

[2] Whittington admitted that, before January 2011, he was aware that Newsom was working after 4:30 p.m.-the time which the center usually ceased operations-but testified that he did not inquire into Newsom's activities. Whittington Depo. at 24. Newsom testified, however, that Whittington must have known about a few details of the arrangement with Taylor since Whittington had watched him fill banana boxes with food. See Newsom Depo. at 45. In January 2011, Whittington asked Taylor about Newsom's presence in the warehouse after hours. Whittington Depo. at 26. Taylor informed him of the arrangement, but Whittington chose not to look into it further. Id.

[3] CLS maintained another "banana-box" program, which appears to be a company-sanctioned program, for CLS employees with perfect work attendance. The CLS warehouse in Olive Branch appears to have participated in this program. See Garland Depo. at 49.

termination remain unclear.[4] Newsom testified that the program was resumed, and judging from his deposition testimony, he believed the program was reinstated in March 2011. But it is not clear whether new conditions were laid upon the program and to what degree Whittington was aware that the program resumed. Regardless, in mid-June 2012, Whittington reviewed the surveillance videotapes of the warehouse and discovered that Newsom had been "stealing" banana boxes of food. Newsom Depo. 42-44. As a result, Whittington fired Newsom. Id. Immediately thereafter, Newsom called Jack Garland, CLS's regional supervisor, to explain to him the banana-box arrangement and complain about being fired. Id. at 78-79. Garland, believing the arrangement to be improper, called Whittington and Taylor to instruct them to calculate how many hours Newsom worked after-hours and pay Newsom for that time.[5] Garland Depo. at 57-58. Whittington and Taylor did as they were instructed, and CLS sent

---

[4] The missing details would be helpful to the Court in order to formulate a coherent narrative, but they are not "material facts" as contemplated by Rule 56. CLS does not attack Plaintiffs' claims by disputing that CLS did not have constructive or actual knowledge of Plaintiffs' activities. There is no material dispute that Taylor oversaw Plaintiffs' activities. Typically, either he or Whittington was responsible for locking up the warehouse after the Plaintiffs finished their chores. Whittington Depo. at 26.

[5] In his deposition (pgs. 57-58), Garland testified to the following exchange with Whittington:

Attorney: "What did [Whittington] tell you in that next phone call?"
Garland:  "That [Newsom] was working off the clock and wasn't getting paid."

4

Newsom a check for the amount Whittington and Taylor determined was his uncompensated work, along with an apology letter.[6] Newsom at 80-81. Garland was not made aware of Bramlett's after-hours work nor was Bramlett compensated for the extra work.

On August 17, 2011, Newsom and Bramlett on behalf of themselves and all others similarly situated filed a complaint against CLS, asserting one federal and one state law claim. First, they alleged that CLS violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., by failing to compensate them for their overtime work. Second, they asserted a state law *quantum meruit* claim. Some months later, the Plaintiffs filed an Amended Complaint adding Plaintiff Jaja Mani to the suit but dropping their intention to represent a larger class.

On April 4, 2012, the Court granted a motion allowing Plaintiff Jaja Mani's attorney to withdraw as counsel. As a result, Mani was ordered to notify the Court within fourteen days either that he had retained new counsel or that he intended to proceed pro se. Mani failed to respond to this Order. Accordingly, Magistrate Judge Virden entered a Report and Recommendation [**docket entry no. 59**] that Mani be dismissed from the lawsuit with prejudice for

---

[6] The apology letter stated in unequivocal terms the impropriety of the arrangement: "It has come to our attention that you were mistakenly underpaid your wages for certain hours worked at our warehouse facility. We certainly regret this oversight and are very interested in ensuring you are properly paid at the appropriate rate for all hours worked." See July 22, 2011 Letter, docket entry no. 68-12.

failure to prosecute. More recently, the Court entered an Order [docket entry no. 73] denying CLS's request to dismiss Plaintiffs' FLSA claims but found that the federal statute preempted, in part, Plaintiffs' state law claims.

Because Mani failed to comply with the Court's Order and failed to object to the Report and Recommendation, and has not otherwise given this Court any indication that he intends to prosecute this case, the Court adopts the Report and Recommendation of the Magistrate Judge and will dismiss Mani's claims with prejudice without further discussion, leaving only Newsom and Bramlett's federal law and state law claims unresolved. These claims are ripe for consideration and will be addressed in detail below.

## II. Summary-Judgment Standard

Summary judgment is apposite "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The party moving for summary judgment bears the initial responsibility of apprising the district court of the

basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Analysis

It is undisputed that Newsom and Bramlett worked for CLS "off the clock" in exchange for a banana box of food. This case turns on a simple legal question: Does Newsom and Bramlett's after-hours

7

work constitute a violation of the FLSA? The Plaintiffs advance a simple and persuasive argument why the Court should answer affirmatively. Put simply, the Plaintiffs maintain that, at all times pertinent to the present suit, they worked as CLS employees with CLS's knowledge and under CLS's supervision.[7] Judging from the record, CLS's management appears to have initially adopted this view, at least with respect to Newsom, by sending him a check and an apology letter. Now at the summary-judgment stage of litigation, however, CLS takes a different view of the matter, offering two legal theories why the Plaintiffs cannot recover for their FLSA claims: (1) Newsom and Bramlett acted as independent contractors, not employees, when performing their after-hours work, and (2) even if Newsom and Bramlett were employees, they were properly compensated for their work with food.

## 1. Liability Under the FLSA

*A. The Plaintiffs are Employees, not Independent Contractors*

Most discussions of whether a plaintiff should be considered an employee under the FLSA typically begin with then-Senator Hugo Black's observation that the term 'employee' under the FLSA has "the broadest definition that has ever been included in any one act." E.g., <u>United States v. Rosenwasser</u>, 323 U.S. 360, 363 n.3 (1945) (citations omitted); <u>Johns v. Stewart</u>, 57 F.3d 1544, 1557

---

[7] CLS concedes that it is an employer subject to the FLSA. 29 U.S.C. § 203(d).

8

(10th Cir. 1995); <u>Preston v. Settle Down Enters., Inc.</u>, 90 F. Supp. 2d 1267, 1274-75 (N.D. Ga. 2000). 'Employ' is defined, simply, as to "suffer or permit to work." 29 U.S.C. § 203(g).[8] By its plain terms, that definition would appear to encompass the activities of both Newsom and Bramlett, who were suffered or permitted to work for CLS in exchange for food. Nevertheless, courts have scaled back the expansive reach of the definition by limiting its application. One such curtailment occurs in situations where the worker seeking FLSA protection is considered to be an independent contractor rather than an employee. <u>Carrell v. Sunland Const., Inc.</u>, 998 F.2d 330, 332 (5th Cir. 1993); <u>see also</u> <u>Goldberg v. Whitaker House Co-op., Inc.</u>, 366 U.S. 28, 32 (1961).

To distinguish between an employee and an independent contractor, a district court "focus[es] on whether the alleged employee, as a matter of economic reality, is economically dependent upon the business to which he renders his services." <u>Carrell</u>, 998 F.2d at 332 (citing <u>Brock v. Mr. W Fireworks, Inc.</u>, 814 F.2d 1042, 1043, 1054 (5th Cir. 1987)). In other words, the task is to determine "whether the individual is, as a matter of economic reality, in business for himself." <u>Carrell</u>, 998 F.2d at 332 (citation omitted); <u>see also</u>, <u>Dole v. Snell</u>, 875 F.2d 802, 804 (10th Cir. 1989). Economic independence is judged using a five-

_____

[8] 29 U.S.C. § 203(e) does exclude some types of "employment," but none of the exclusions apply in this case.

factor test:

> (1) (T)he degree of control exercised by the alleged employer, (2) the extent of the relative investments of the worker and alleged employer, (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer, (4) the skill and initiative required to perform the job, and (5) the permanency of the relationship.

Carrell, 998 F.2d at 332. No one factor is determinative. Id.

In an effort to make out their independent-contractor argument, CLS argues that it had no control over Newsom and Bramlett's activities by highlighting the voluntary nature of the program and the fact that it was initiated by Newsom. Just because Newsom initiated and voluntarily participated in the program, however, does not mean that he controlled the terms and nature of his work. While Taylor's oversight of Newsom and Bramlett may not have been stringent, the minimal oversight appears to be more a product of Plaintiffs' industrious work ethic than their ability to exercise independent judgment in the performance of their tasks. Taylor, as a CLS supervisor, at all times maintained the authority to instruct them in their duties, inspect their work, and discontinue the program at any time if he was unsatisfied.

Moreover, application of the remaining factors plainly demonstrates that the Plaintiffs are miscast as independent contractors, so much so that the Court needs to devote only a few sentences to each factor's application. The second factor (relative investments) weighs exclusively in the Plaintiffs' favor as they

10

invested only their time into their after-hours work. It is undisputed that CLS provided all the necessary cleaning supplies and allowed Newsom to operate its floor machine in the execution of his duties. Whittington Depo. at 24. The third factor (opportunity for profit or loss) undoubtedly favors the Plaintiffs inasmuch as CLS was Plaintiffs' exclusive outlet for cleaning work. Should CLS have discontinued the program, the Plaintiffs would have had no opportunity for profit. The fourth factor (skill required) highlights the fact that the Plaintiffs were performing simple cleaning tasks for the employer–not the sort of dexterous work that is typically envisioned in an independent-contractor relationship. The fifth factor (permanency of the relationship) underscores the obvious conclusion. The Plaintiffs worked solely and exclusively for CLS for the period of time in which they were providing cleaning services and can only be considered CLS employees. In sum, the factors all point in one direction: Newsom and Bramlett were not, as a matter of economic reality, in business for themselves. Carrell, 998 F.2d at 332; see also Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1189 (5th Cir. 1979).

   *B. Banana Boxes of Food Do Not Constitute Wages*

   CLS advances its second contention–that Newsom and Bramlett were compensated appropriately under the FLSA with a brief–and incomplete–reference to the definition of 'wages' in the statute, and therefore the Court will give this argument short shrift. Under

11

the FLSA, the term 'wages' can include board, lodging, and other facilities as CLS suggests. 29 U.S.C. § 209(m). As an initial matter, it is unclear as to whether banana boxes of food fall within the categories of "board, lodging, or other facilities." The statute does not mention food, sustenance, or any other similar term. Moreover, the statute continues that in order for "board, lodging, and other facilities" to constitute wages under the FLSA, they must be "*customarily furnished by such employer to employees*." Id. (emphasis added). The Court declines to opine as to whether banana boxes of food are customarily furnished by CLS to its employees for cleaning services, and since CLS fails to make such an argument, the Court will dismiss it without prejudice. CLS may raise this argument subsequently with respect to damages, provided it advances the argument with cited legal authority.[9]

*C. CLS is Liable for Newsom and Bramlette's After-Hours Work*

Having determined, based on the uncontroverted facts in the record, that Bramlett and Newsom were employees of CLS who were not paid wages for their after-hours work, the Court finds that CLS is liable under the FLSA and thus grants summary judgment in favor of the Plaintiffs. The Court now must determine whether there is a genuine dispute of material fact as to the damages to which the

---

[9] There is also the additional matter of whether CLS kept adequate records of the banana boxes distributed to Newsom and Bramlett and whether those boxes cost CLS anything. See Donovan v. I & J, Inc., 567 F. Supp. 93, 109 (D. N.M. 1983).

Plaintiffs are entitled. If the Court finds that the damages are factually in dispute, that issue must be presented to the fact-finder. See Preston, 90 F. Supp. 2d at 1276 (granting summary judgment as to liability but finding that damages should be determined by a jury).

**2. Whether the Court Can Determine Damages**

As to damages, there are two matters which the Plaintiffs must demonstrate in order to be awarded damages at the summary-judgment stage. First, they must show that there is no genuine dispute of material fact as to the number of their uncompensated hours. See Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721, 726 (5th Cir. 1961) (requiring the defendant to put forward evidence negating the reasonableness of the plaintiff's estimated work hours). Second, because the Plaintiffs seek damages beyond the two-year general statute of limitations, they must show that CLS acted "willfully" in order for the Court to extend FLSA's statute of limitations to three years. 29 U.S.C. § 255(a).[10]

> *A. There is a Genuine Dispute Regarding the Number of Uncompensated Hours the Plaintiffs Worked*

Even a cursory look at the record demonstrates that the number of hours worked by Newsom and Bramlett is in genuine dispute. Newsom maintains that he worked from the time he clocked out until

---

[10] The Plaintiffs, seeking to recover liquidated damages equal to the amount of their actual damages, also allege that CLS acted in bad faith, but, as explained below, they do not have the burden of proving bad faith. See 29 U.S.C. § 216(b).

9:00 p.m. every day at the Olive Branch warehouse. Newsom Depo. at 37. Taylor's testimony, however, rebuts this assertion, as do the warehouse records, which indicate that on many days the Olive Branch facility was locked prior to the time Newsom could have plausibly worked the four-and-a-half hours he asserts. When confronted with the warehouse closing records, which indicate that the plant was closed before 9:00 p.m., Newsom unequivocally responded, "Those records are wrong." Newsom Depo. at 37.

Not only does Newsom's testimony conflict with Taylor's, the expert report offered by the Plaintiffs is incompatible to Newsom's own testimony. Rather than using Newsom's four-and-a-half-hour estimation, Plaintiffs' expert used the time Newsom clocked out at the plant until the official time the warehouse closed–sometimes after 9:00 p.m. and sometimes well before 9:00 p.m.–in order to calculate the number of Newsom's daily uncompensated hours. See May 8, 2012, Letter, docket entry no. 68-14. Moreover, Plaintiffs' expert calculated Newsom's after-hours work at the Memphis warehouse at fifteen hours per week despite Newsom's testimony that he worked twelve-and-a-half hours per week. See Newsom Depo. at 18. At this point, there is a genuine dispute as to the number of hours Newsom worked, and certainly, the Court cannot award Newsom the damages outlined in his expert report, which do not appear to have any basis in the testimony presented to the Court.

As for Bramlett, there are two reasons the Court cannot award

14

her damages at this point. First, there is contradictory evidence in the record as to the number of hours she worked. In her deposition she estimates that she worked three-and-a-half hours per day, but in her declaration she states that she worked two hours per day. Bramlett Depo. at 13; Bramlett Decl. at 1. Second, for reasons unexplained to the Court, Plaintiffs' expert calculated the amount of Bramlett's actual damages by using the number of hours *Newsom* worked overtime as a baseline for determining the number of hours Bramlett worked after she clocked out.[11] <u>See</u> May 8, 2012, Letter at 2, docket entry no. 68-14. As explained above, the number of hours used to calculate Newsom's damages are flawed, and consequently the expert's calculation of Bramlett's damages must be flawed.

The Plaintiffs are entitled to a fair estimation of their damages even if they cannot recount the exact amount of time they worked, but at the summary-judgment stage they may not recover damages which are directly disputed by other evidence in the record. <u>Mitchell</u>, 286 F.2d at 726. Because there is conflicting evidence as to the amount of compensable damages, the Court finds that the issue of how many hours the Plaintiffs worked should be presented to the finder of fact at trial. See <u>Preston</u>, 90 F. Supp.

---

[11] Plaintiffs' expert explained that he understood that Bramlett worked two-and-a-half hours less than Newsom. <u>See</u> <u>id.</u> It is not clear where he got this information, but it is contrary to either Newsom's four-and-a-half-hour claim or Bramlett's three-and-a-half-hour claim.

2d at 1276.

    *B. There is Insufficient Evidence to Determine Whether CLS Committed a Willful Violation of the FLSA*

    Contrary to both Parties tendency to conflate the issue of willfulness with the issue of bad faith, the issues, arising under different provisions of the FLSA, are not interchangeable, and the inquiries the Court undertakes to resolve each matter are distinct. Procedurally, whether an employer willfully violated the FLSA is a mixed question of fact and law appropriate for presentation to a fact-finder when a genuine dispute is present, whereas the Court possesses sole discretion as to whether to deny a plaintiff liquidated damages when the employer demonstrates good faith. <u>See</u> <u>Jarrett v. ERC Properties, Inc.</u>, 211 F.3d 1078, 1082-84 (8th Cir. 2000). Moreover, the Plaintiffs bear the burden of convincing the Court that the statute of limitations should be extended one year for willfulness, while the Defendants must present the good-faith defense. <u>See</u> <u>id.</u>

    Here, the Court finds that CLS is not entitled to summary judgment on the issue of willfulness. As the Supreme Court noted in <u>McLaughlin v. Richland Shoe Company</u>, Congress intentionally chose to create a two-tiered statute of limitations under the FLSA, drawing a distinction between "ordinary violations" and "willful violations." 486 U.S. 128, 132-33. On first impression, the Court views the present violation as unique, but not deserving of the heightened liability imposed by Congress for more-than-negligent

16

violations. See id. (Discussing how the term 'wilful' is synonymous with 'voluntary', 'deliberate', and 'intentional'.) Applying the wilfulness standard established in McLaughlin, this Court finds no evidence in the record to indicate that CLS "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Id. at 133.

There is no question that CLS, by virtue of Taylor's supervision, knew or should have known about the activities of the Plaintiffs, but there is no indication that anyone at CLS knew or showed reckless disregard for the fact that Newsom and Bramlett were working *in violation of the FLSA*.[12] Taylor, it appears, did little more than accept Newsom's proposal for additional work and oversee Newsom and Bramlett's activities. While Taylor's ignorance of the law does not excuse CLS of liability, it is relevant to the issue of wilfulness. Mireles v. Frio Foods, 899 F.2d 1407, 1416 (5th Cir. 1990) ("Simply failing to seek legal advice . . . does not evidence a willful violation.").

Additionally, the evidence indicates that when Newsom's activities were discovered by those knowledgeable of employment law, CLS immediately worked to resolve the issue, even sending

---

[12] Even under the Fifth Circuit's overruled, laxer Jiffy June standard, it not apparent that CLS was aware that the FLSA was "in the picture." See id. 486 U.S. at 135 (imposing a more stringent standard for establishing "wilful" violations of the FLSA than simply demonstrating that the employer knew the FLSA was "in the picture").

Newsom an apology letter. As for Bramlett, it does not appear that CLS was aware of her claims prior to this litigation. CLS's conduct, at least as presented by the Plaintiffs in their Motion, does not rise to the level of wilfulness typically evidenced in other cases. Singer v. City of Waco, Tex., 324 F.3d 813, 822 (5th Cir. 2003) (noting that the defendant admitted that the plaintiffs were being paid incorrectly but continued the practice); Reich v. Bay, Inc., 23 F.3d 110, 117 (5th Cir. 1994) (stating that the defendant heard that the practice might violate the FLSA but failed to investigate). The Court denies the Plaintiffs summary judgment on this issue and notes that summary disposition was not sought by CLS. The Plaintiffs will be allowed to present evidence, if it is available, on this issue to the fact-finder when they present their claims for damages. Cash v. Conn Appliances, Inc., 2 F. Supp. 2d 884, 897 (E.D. Tex. 1997) ("Willfulness is a fact issue for the jury." (internal quotation marks and citations omitted)).

C. CLS Has Not Presented a Good-Faith Defense

As to whether CLS has a defense, it is up to CLS to assert a good-faith defense at the appropriate time. Liquidated damages equal to the amount of actual damages are the norm under the FLSA, 29 U.S.C. § 216(b), and they may be remitted by the Court upon a showing of good faith. 29 U.S.C. § 260; see Jarrett, 211 F.3d at 1083. To demonstrate good faith, the defendant must offer "reasonable grounds for believing that his act or omission was not

18

a violation of the [FLSA]." 29 U.S.C. § 260. While CLS made a passing reference to good faith in a heading in its summary judgment brief, it has not put forward this argument for serious consideration, that is, it has not alleged a specific ground for believing that Newsom and Bramlett's after-hours work was not a violation of the FLSA. The Court will proceed to trial with the issue of good faith left unresolved.

### 3. The *Quantum Meruit* Claim

Having thoroughly addressed Plaintiffs' FLSA claim, the Court will briefly address what remains of their state law claim over which this Court has supplemental jurisdiction. <u>See</u> September 6, 2012 Order (limiting Plaintiffs' recovery to "gap time" claims). The Plaintiffs contend that they should be able to recover the cash value for their services under a *quantum meruit* theory. CLS responds, quite simply, that, if the rules of contract theory are to apply, the Court should find that the Plaintiffs received the benefit of their bargain: banana boxes of food. Def.'s Resp. Br. at 13-14. Indeed, there is evidence that Taylor and Newsom reached an oral agreement and that the contract between Taylor and Newsom was not broken. While Congress, through the FLSA, has imposed restrictions on certain employers, such as the manner in which their employees should be paid 'wages', <u>see</u> <u>supra</u>, the Court finds no merit to Plaintiffs' attempt to use contract theory as a vehicle to impose an alternative liability upon CLS. The evidence

19

demonstrates that CLS, while failing to abide by the regulations established by the FLSA, did at least uphold its end of the deal, and therefore it cannot be liable under a *quantum meruit* theory.

### IV. Conclusion

**IT HEREBY ORDERED THAT** Plaintiffs' Motion for Summary Judgment [**docket entry no. 61**] is **GRANTED IN PART AND DENIED IN PART.** The Court finds no genuine dispute of material fact as to Plaintiffs' FLSA claim and therefore **GRANTS** summary judgment in their favor with respect to the Defendant's liability. In all other respects, Plaintiffs' Motion is **DENIED. IT IS FURTHER HEREBY ORDERED THAT** the Defendant's Motion for Summary Judgment [**docket entry no. 46**] is **GRANTED IN PART AND DENIED IN PART.** The Court finds no genuine dispute of material fact at to Plaintiffs' *quantum meruit* claim and **GRANTS** summary judgment in the Defendant's favor. Plaintiffs' *quantum meruit* claim is **DISMISSED WITH PREJUDICE.** In all other respects, the Defendant's motion is **DENIED. IT IS FURTHER HEREBY ORDERED THAT** the Defendant's First Motion to Dismiss [**docket entry no. 8**] is **DISMISSED AS MOOT,** in accordance with the Court's previous Order. <u>See</u> Sep. 6, 2012 Order at 1 n.1. Finally, as indicated above, **IT IS FURTHER HEREBY ORDERED** that the Report and Recommendation [**docket entry no. 59**] of the Magistrate Judge is **ADOPTED IN FULL.** Plaintiff Jaja Mani's claims are **DISMISSED WITH PREJUDICE.** No further order shall issue.

So **ORDERED,** this the 17th day of September, 2012.

    /s/ David Bramlette
**UNITED STATES DISTRICT JUDGE**